**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DIONNA N. CHAMBERS,**<br><br>Plaintiff,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>Defendant. | **CASE NO. ____________________**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **DIONNA N. CHAMBERS** ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, **EQUIFAX INFORMATION SERVICES, LLC** ("**Equifax**"), and states the following:

## PRELIMINARY STATEMENT

1. This is an action for damages, exclusive of attorney's fees and costs, brought by Plaintiff against Defendant Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Equifax is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court because it is organized under the laws of the State of Georgia and maintains its principal place of business within this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Equifax resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and/or caused by Defendant herein.

5. Assignment to the Atlanta Division is proper because Equifax maintains its principal place of business in Fulton County, Georgia.

## PARTIES

6. Plaintiff is a natural person residing in Los Angeles County, California.

7. Plaintiff is a Consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Equifax is a Georgia Limited Liability Company, with a principal business address of 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

9. Equifax is registered to conduct business in the State of Georgia, where its Registered Agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

10. Equifax is a nationwide "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f). In exchange for fees, dues, or through cooperative arrangements, it regularly engages in collecting and evaluating consumer credit data and other information about individuals for the purpose of creating and supplying consumer reports to third parties.

Equifax relies on the mail, internet, and other instruments of interstate commerce to prepare and distribute these reports. As such, Equifax is fully subject to, and aware of, its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Plaintiff's August 2026 Consumer Disclosure

11. On or about August 5, 2026, Plaintiff requested a copy of her consumer credit disclosure from Equifax.

12. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, Equifax was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of her request, with the limited exception that her Social Security number could be truncated upon request.

13. Equifax provided an electronic copy of Plaintiff's Consumer Disclosure ("Equifax's Disclosure"), a thirty-six (36) page document dated August 05, 2026 and bearing Confirmation No. 6217559675. SEE PLAINTIFF'S EXHIBIT A.

14. Plaintiff requested and reviewed Equifax's Disclosure in order to examine the information Equifax maintains about her, to verify that information against her own records, and to identify inaccurate or incomplete items so that she could exercise her dispute rights under 15 U.S.C. § 1681i.

### Equifax's Disclosure Was Not Complete, Clear, or Accurate

15. Despite a requirement to disclose all information in her credit file at the time of her request, Equifax's Disclosure omitted significant amounts of information contained in Plaintiff's credit file.

16. Under the heading "Credit Accounts," Equifax's Disclosure reported thirty (30) tradelines. SEE PLAINTIFF'S EXHIBIT A.

**Missing Original Creditor**

17. Equifax's Disclosure reported a tradeline furnished by Midland Credit Management, with a balance of $1,153, an amount past due of $1,153, a Date Opened of July 21, 2025, and a Date of 1st Delinquency of November 29, 2024.

18. Equifax itself classified that tradeline's "Loan/Account Type" as a "Debt Buyer Account," and assigned it Narrative Code 057, which Equifax's own narrative code key within the Disclosure defines as "Collection Account."

19. Midland is a Debt Buyer – a company whose primary purpose is the purchase and collection of debts which were originally owed to third parties.

20. Midland is a debt buyer, not an original creditor. It does not lend to consumers and cannot be the original creditor of any account.

21. Despite this, when disclosing the Midland tradeline to Plaintiff, Equifax omitted any reference to the true Original Creditor. The only entity Equifax named in connection with the $1,153 obligation is Midland itself.

22. The “Date Opened” of July 21, 2025 that Equifax disclosed is not the date the underlying obligation was originated; it is the date Midland acquired or began reporting the receivable. Equifax’s Disclosure supplies no origination date, no original account number, and no original creditor name for the underlying debt.

23. As a result, Equifax’s Disclosure gave Plaintiff no means of determining what obligation the Midland tradeline represents, whether the underlying debt is hers, whether it was previously paid, settled, or otherwise resolved, or whether it duplicates another tradeline already appearing in her file.

24. Equifax’s Disclosure instructs consumers to “make sure accounts listed belong to you” and to confirm that negative items are “correct and up to date.” Equifax withheld the very information — the identity of the original creditor — that would have permitted Plaintiff to do either.

25. Equifax thus shifted the burden of disclosure and inquiry away from itself, and on to the Plaintiff.

26. Equifax’s Disclosure describes the “Credit Accounts” heading as encompassing “all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.” A purchased collection receivable is none of these — as Equifax’s own Narrative Code 057, “Collection Account,” acknowledges on the face of the same tradeline. Equifax should have disclosed this tradeline as a collection account rather than as a credit account.

**Missing Account Numbers**

27. Equifax omitted the full account numbers relating to all thirty (30) tradelines reported in Equifax's Disclosure, displaying in each instance an asterisk followed by four characters and nothing more. Not one account number was disclosed in full. SEE PLAINTIFF'S EXHIBIT A.

28. The truncation is not limited to any one category of account. Equifax truncated the account numbers of open and closed accounts, revolving and installment accounts, accounts reported as current, accounts reported as charged off, and the debt-buyer collection account alike.

29. Several of the four-character fragments Equifax disclosed are alphanumeric rather than numeric, confirming that what Equifax displayed is the terminal four characters of a longer identifier maintained within Equifax's file, and not the entirety of the identifier furnished to it.

30. Upon information and belief, the data furnishers reported the full account numbers belonging to their respective accounts to Equifax, and this information was contained within Equifax's file regarding Plaintiff at the time of her request.

31. When Equifax produces and sells reports regarding Plaintiff to third parties, the full account numbers and names of the original creditors are included in its reports.

32. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

33. Plaintiff never requested that Equifax truncate any account number. Equifax truncates account numbers as a matter of uniform, automated practice, applied to every tradeline in every disclosure, without regard to any request by the consumer.

34. The FCRA's single truncation exception, 15 U.S.C. § 1681g(a)(1)(A), applies to the consumer's Social Security number and applies only at the consumer's request. It has no application to account numbers.

35. The truncation was especially confusing to Plaintiff because her file contains multiple tradelines furnished by the same creditors, including three tradelines from a single credit card issuer, three from a single automotive lender, and multiple tradelines from several other furnishers. Four characters are insufficient to distinguish among them or to match them against Plaintiff's own records.

36. Equifax has a duty to disclose all of the information regarding the accounts in Plaintiff's file; however, Equifax breached its duty by failing to provide the account numbers and the original creditor's name, as such information is necessary for a consumer to be able to research and evaluate the information contained in her credit file.

37. The omission of this information prevents a consumer from reasonably verifying the accuracy of her credit file and undermines the very purpose of the FCRA's disclosure requirement.

38. Because of pervasive system deficiencies, Equifax's automated processes truncate account numbers—showing only the last two or four characters—for accounts reported by

furnishers as "charged off," as well as for various other categories of accounts. Equifax knows of this error but, despite such knowledge, has yet to correct it.

39. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.").

40. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." SEE PLAINTIFF'S EXHIBIT C.

41. Equifax's omission of the original creditor and full account numbers greatly decreases a consumer's ability to understand her consumer credit disclosure, identify the accounts, and compare those accounts with her own records.

42. The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("CDIA"), a trade association representing the CRAs, including Equifax, provides a dedicated K1 Segment field for the "Original Creditor Name" and states that:

**"The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original**.)

**SEE PLAINTIFF'S EXHIBIT B.**

43. The *Credit Reporting Resource Guide* instructs debt collectors and debt buyers to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

44. On information and belief, Midland complied with the *Credit Reporting Resource Guide* and reported the name of the true original creditor of its reported account.

**Omitted Account History**

45. Equifax's Disclosure contains, for each tradeline, a field labeled "Months Reviewed," which states the number of months of account history Equifax has reviewed and retains for that tradeline, and a field labeled "Date Reported," which states the date of the furnisher's most recent report to Equifax.

46. Equifax's Disclosure also contains, for most tradelines, a "Payment History" grid and a section captioned "24 Month History" setting out, month by month, the balance, scheduled payment amount, actual payment amount, last payment date, past due amount, high credit, credit limit, and narrative codes.

47. These fields are Equifax's own admissions concerning the contents of Plaintiff's file, and they establish on the face of the Disclosure that Equifax retained substantially more information than it disclosed.

48. For six (6) tradelines, Equifax stated a "Months Reviewed" figure ranging from four (4) months to sixty-nine (69) months while disclosing no payment history grid and no month-by-month history whatsoever. SEE PLAINTIFF'S EXHIBIT A.

49. For seven (7) additional tradelines, Equifax captioned a section "24 Month History" and then disclosed as few as one (1) and no more than six (6) months of data, against "Months Reviewed" figures ranging from forty-three (43) to ninety-nine (99) months. SEE PLAINTIFF'S EXHIBIT A.

50. The omissions are most consequential on the derogatory tradelines. Equifax reported one charged-off credit card tradeline with a $5,947 balance, a $5,947 past-due amount, a $7,297 charge-off amount, and a Date of 1st Delinquency of November 22, 2019, and displayed charge-off ratings running continuously from May 2020 through May 2026 — yet disclosed underlying balance and payment data for only four months, one of which contains no balance, no scheduled payment amount, no actual payment amount, and no past due amount at all.

51. Equifax also disclosed month-by-month histories containing unexplained interior gaps, omitting individual months from the middle of otherwise continuous series, and withheld the most recently furnished month of data on multiple tradelines by disclosing a "Date Reported" that postdates the last month of history it supplied.

52. On the Midland tradeline, Equifax left the "Status" field blank entirely while simultaneously reporting six consecutive months rated "C" — which Equifax's own key defines as "Collection Account" — in the payment history grid.

53. Upon information and belief, each month of history omitted from Equifax's Disclosure was reported to Equifax by the respective furnisher and was contained within Equifax's file regarding Plaintiff at the time of her request. Equifax's own "Months Reviewed" and "Date Reported" fields are admissions to that effect.

54. Section 1681g(a)(1) does not permit a CRA to disclose an abridged, sampled, or representative version of a consumer's file. It requires disclosure of all information in the consumer's file at the time of the request.

**Prevalence of Equifax Errors**

55. On information and belief, Equifax produced Plaintiff's disclosure using an automated template that pulls data from its database and inserts it into preset fields of its consumer disclosure format. Upon information and belief, this same template is used virtually every time a consumer requests her file from Equifax.

56. Consumer disclosures issued by Equifax all exhibit the same truncated account number, missing original creditor name, and omitted account history errors, irrespective of the identity of the requesting consumer.

57. As a result, every consumer who requested and received an Equifax file disclosure during the period the template has been in use likely received an incomplete disclosure similar to Plaintiff's.

58. Equifax's error has therefore likely affected thousands of consumers.

59. Despite being aware of these defects for years, Equifax has taken no corrective action. *See, e.g.*, *Justin Purdy v. Equifax Information Services LLC*, Case No. 8:19-cv-00217 (M.D. Fla. Jan. 28, 2019). Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

60. Any reading of § 1681g under which Equifax may withhold original creditor names, truncate every account number in a consumer's file, and omit months and years of account history that it concedes it maintains is objectively unreasonable in light of the statutory text, the guidance of the FTC, and the weight of authority. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007).

61. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

62. Plaintiff has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

63. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived her of this right.

**Harm to Plaintiff**

64. Plaintiff was actively engaged in disputing information in her Equifax file at the time of the Disclosure, as the Disclosure itself reflects. Equifax assigned Narrative Code 166 — "Consumer Disputes This Account Information" — to the Midland tradeline; Narrative Code 022 — "Consumer Disputes – Reinvestigation in Process" — to four additional tradelines; and Narrative Code 283 — "Account Previously in Dispute – Now Resolved by Data Furnisher" — to two others.

65. Equifax's deficient Disclosure obstructed that effort. Without the original creditor's name, Plaintiff could not determine what obligation the $1,153 Midland collection represents, could not determine whether it duplicated another tradeline in her file, and could not frame a targeted, well-supported dispute.

66. Without complete account numbers, Plaintiff could not reliably match the disclosed tradelines to her own records.

67. Without the withheld months of balance and payment history, Plaintiff could not verify the delinquency chains Equifax reports, could not test the reported dates of first delinquency against the underlying monthly data, and could not determine whether the derogatory ratings Equifax reports are supported by any underlying account data at all.

68. Plaintiff expended substantial time and effort attempting to reconcile Equifax's Disclosure against her own records and was unable to do so.

69. The lack of accurate, full account numbers, the omission of the original creditor, and the omission of account history caused Plaintiff great frustration, confusion, anxiety, and

emotional distress when trying to understand her credit report and verify it against her own records.

70. Plaintiff's Equifax file is not dormant. Equifax's Disclosure reports a hard inquiry dated December 12, 2025, together with numerous soft inquiries, establishing that Equifax actively assembles, maintains, and furnishes information concerning Plaintiff to third parties.

71. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied." *See also TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021).

72. Plaintiff has hired the undersigned counsel to represent her in this matter and has assigned to them her right to obtain reimbursement for her reasonable fees and costs.

## COUNT 1

## EQUIFAX WILLFUL VIOLATIONS OF THE FCRA

73. Plaintiff adopts and incorporates paragraphs 1 through 72 as if fully stated herein.

74. Equifax violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a Consumer, all of the information in her file at the time of the request. Specifically, Equifax disclosed the account reported by Midland without disclosing the name of the Original Creditor; truncated the account numbers of all thirty (30) tradelines in Plaintiff's file; and omitted months and years of account history, even though the full account numbers, the original creditor name, and the omitted account history were reported by the data furnishers and maintained within Equifax's files.

75. Equifax knowingly provided incomplete and inaccurate information in Plaintiff's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

76. Equifax's violations were willful in that Equifax knew, or acted in reckless disregard of the substantial and obvious risk, that its automated disclosure practices withheld information that § 1681g(a)(1) requires it to disclose.

77. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of her actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment against Defendant Equifax, awarding Plaintiff the following relief:

a. The greater of Plaintiff's actual damages and statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other relief that this Court deems just and proper.

## COUNT 2

## EQUIFAX NEGLIGENT VIOLATIONS OF THE FCRA

78. Plaintiff adopts and incorporates paragraphs 1 through 72 as if fully stated herein.

79. Equifax has a legal duty to provide a consumer with a clear and accurate disclosure of all information within its file at the time of the consumer's request.

80. Equifax breached this duty when it disclosed the account reported by Midland without disclosing the name of the Original Creditor; truncated the account numbers of all thirty (30) tradelines in Plaintiff's file; and omitted months and years of account history, even though the full account numbers, the original creditor name, and the omitted account history were reported by the data furnishers and maintained within Equifax's files.

81. Equifax's breach was the direct and proximate cause of Plaintiff's damages, including her inability to verify the contents of her file, her inability to identify the obligation underlying the Midland collection tradeline, her impaired ability to formulate and pursue disputes under 15 U.S.C. § 1681i, the time and effort she expended attempting to reconcile the Disclosure, and her frustration, confusion, anxiety, and emotional distress.

82. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorney's fees and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment against Defendant Equifax, awarding Plaintiff the following relief:

a. Plaintiff's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

83. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: 16th August 2026.

Respectfully Submitted,

*/s/ Esther Oise*

**ESTHER OISE, ESQ.**
Georgia Bar No. 686342
OISE LAW GROUP, P.C.
2635 Governors Walk Blvd
Snellville, Georgia 30039
Tel: (770) 895-3736
Fax: (980) 265-8981
oiselaw@gmail.com
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

**A.** Plaintiff's Equifax Consumer Disclosure, dated August 5, 2026 (Confirmation No. 6217559675).

**B.** Credit Reporting Resource Guide Excerpts (K1 Segment — Original Creditor Name).

**C.** FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000).